| | |
|---|---|
| DISTRICT COURT OF THE 2nd JUDICIAL DISTRICT, DENVER COUNTY, STATE OF COLORADO<br><br>Court Address:    1437 Bannock Street<br>                      Denver, CO 80202<br><br>Phone Number: (720) 865-8301 | DATE FILED: July 13, 2018 4:13 PM<br>FILING ID: A7C257E9ED070<br>CASE NUMBER: 2018CV32595 |
| Plaintiff:<br><br>**DUANE THOMPSON**<br><br>v.<br><br>Defendant:<br><br>**SAFECO INSURANCE COMPANY OF AMERICA** | ▲ Court Use Only ▲ |
| Plaintiff's Attorneys:<br><br>Marc Harden, Esq. #36812<br>Britt A. Holtz, Esq. #49051<br>ZANER HARDEN LAW, LLP<br>1610 Wynkoop Street, Suite 120<br>Denver, Colorado 80202<br>Phone Number:  (303) 563-5354<br>Facsimile Number: (303) 563-5351<br>E-Mail:  mh@zanerhardenlaw.com<br>            bh@zanerhardenlaw.com | Case No.:<br><br>Division: |
| **CIVIL COMPLAINT AND JURY DEMAND** ||

The Plaintiff, Duane Thompson, by and through his undersigned attorneys, ZANER HARDEN LAW, LLP, hereby submits the following Civil Complaint and Jury Demand and asserts:

## JURISDICTION AND VENUE

1.     At all times relevant to this action, Plaintiff Duane Thompson (hereinafter the "Plaintiff") resided in the State of Colorado. Plaintiff currently resides in Arapahoe County.

2.     Upon information and belief, at all times relevant to this action, Defendant Safeco Insurance Company of America (hereinafter "Defendant") was and is a New Hampshire insurance company authorized to conduct business in the State of Colorado, including Denver County, with its registered agent, the Corporation Service Company, located at 1900 W. Littleton Blvd., Littleton, CO 80120.

EXHIBIT

A

3.      This matter arises out of a dispute regarding a Colorado insurance contract between Plaintiff and Defendant.

4.      Venue is proper at Denver County District Court pursuant to C.R.C.P. 98(c).

## FACTUAL ALLEGATIONS

5.      On or about March 5, 2014, at approximately 11:24 a.m., the Plaintiff and Caitlin McLeod (hereinafter "McLeod") were involved in a motor vehicle collision at the intersection of DTC Boulevard and East Belleview Avenue, in Arapahoe County, Colorado.

6.      At the time of the collision, the Plaintiff was the restrained front seat passenger in a 2011 Ford Escape (hereinafter the "Ford") being driven by Russell Young.

7.      The Ford Plaintiff was a passenger in was traveling southbound on DTC Boulevard in a through lane approaching the intersection of East Belleview Avenue.

8.      McLeod was driving a 1994 Plymouth Sundance (hereinafter the "Plymouth"), traveling northbound on DTC Boulevard, attempting to make a left-hand turn from northbound DTC Boulevard onto westbound East Belleview Avenue.

9.      McLeod failed yield the right of way to the Ford, who had a green traffic signal, and entered the intersection when it was unsafe to do so.

10.     As a result of McLeod's failure to yield the right of way, the front of the Ford struck the passenger side of the Plymouth, causing significant damage to both vehicles.

11.     The collision caused serious injuries to Plaintiff.

12.     When McLeod failed to keep a proper lookout and failed to yield the right of way, thereby causing the collision between the Plymouth and the Ford, she drove in a careless and imprudent manner and failed to take into account the safety of others, particularly that of Plaintiff.

13.     Plaintiff suffered serious physical injuries as a result of the aforementioned collision, including but not limited to injuries to his right thumb and wrist, ultimately necessitating surgical intervention for a carpal and cubital tunnel release in his right arm.

14.     As a result of his collision related injuries, Plaintiff underwent significant medical treatment and has incurred over $47,000.00 in medical expenses.

15.     The Plaintiff was not comparatively negligent at the time of the collision.

16.     The Plaintiff did not cause the aforementioned collision.

17.     As a direct and proximate result of McLeod's negligence, the Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to, past and future medical expenses, wage loss, and other economic losses.

18.     As a direct and proximate result of McLeod's negligence, the Plaintiff suffered in the past, and will continue to suffer in the future, non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional stress and impairment of quality of life.

19.     As a direct and proximate result of McLeod's negligence, the Plaintiff suffered physical impairment.

20.     Upon information and belief, McLeod was an underinsured motorist at the time of the aforementioned collision, maintaining limited insurance coverage, less than what was necessary to compensate the Plaintiff for his serious injuries and damages caused by McLeod's negligence.

21.     At the time of the collision, Russell Young, the driver of the Ford Plaintiff was a passenger in, was insured by Defendant for Underinsured Motorist Benefits (hereinafter "UIM Benefits") under at least one policy (hereinafter the "Policy").

22.     Defendant received premium payments from or on behalf of Russell Young over substantial time in exchange for insurance coverage under the Policy, including UIM Benefits.

23.     As a passenger in Russell Young's vehicle, Plaintiff qualified as an "insured" for purposes of UIM Benefits under the Policy.

24.     As an insured for UIM Benefits under the Policy, Plaintiff is entitled to recover UIM Benefits directly from Defendant in the case he was injured by an underinsured and negligent driver, such as McLeod.

25.     The Plaintiff required significant medical treatment and suffered substantial losses as a result of the negligent driving of McLeod, as described above.

26.     After reviewing Plaintiff's medical records and medical bills, as well as other information regarding the Plaintiff's injuries and damages, McLeod's liability insurance carrier, Allstate Insurance Company, determined that Plaintiff's case was valued at more than McLeod's insurance limits of $50,000.00, and thereafter offered those insurance limits to settle the Plaintiff's claims against McLeod.

27.     Thereafter, Plaintiff settled his bodily injury claim for McLeod's policy limits of $50,000.00 after receiving permission from Defendant to accept those policy limits in a letter dated February 19, 2018.

28.     On February 28, 2018, Plaintiff requested that Defendant review his medical treatment records and information about the impact of the injuries on his life and asked that Defendant pay the UIM Benefits owed to him under the Policy.

29.     When the Plaintiff made his request for UIM Benefits under the Policy, his attorneys provided extensive information about the Plaintiff's injuries, damages, and losses including, but not limited to, a detailed injury history letter, medical records, future medical procedure recommendations, past medical bills, and other pertinent documentation supportive of his claim for UIM Benefits.

30.     In his request for UIM Benefits, Plaintiff also provided a detailed explanation of how the collision with McLeod affected his life, including the physical pain he endured, how the collision affected the activities he enjoyed, and the trauma he suffered.

31.     On March 19, 2018, Defendant sent an email to Plaintiff's counsel asking for an extension of time to respond to Plaintiff's request for UIM Benefits. Plaintiff's counsel advised Defendant that the extension was agreeable.

32.     Within the March 19, 2018, Defendant alleged that Plaintiff had large gaps in treatment and notified Plaintiff's counsel that an Independent Medical Review ("IMR") would be completed.

33.     On April 13, 2018, Defendant emailed Plaintiff's counsel, stating "after obtaining our own independent review of the records, we believe that Mr. Thompson has been fully compensated by the underlying carrier."

34.     In response to Defendant's email, Plaintiff requested that Defendant provide Plaintiff with Defendant's independent review.

35.     On April 16, 2018, Defendant provided Plaintiff with a two-page report authored by Kavi Sacher, M.D. In his report, Dr. Sachar was asked numerous questions by Defendant as to the relatedness of Plaintiff's injuries to the March 5, 2014, collision.

36.     Specifically, Defendant asked Dr. Sachar, "Is it possible the carpal tunnel injury was pre-existing before the accident?"

37.     Defendant did not request that Plaintiff submit to a medical examination by Dr. Sachar or that Plaintiff speak with Dr. Sachar regarding his medical conditions prior to the collision.

38.     At no point prior to its determination did Defendant request to interview Plaintiff regarding his medical conditions before and after the collision.

39.     At no point prior to its determination did Defendant request that Plaintiff provide prior medical records for its consideration in evaluating Plaintiff's claim for UIM benefits.

40.     At no point prior to its determination did Defendant speak with Plaintiff's physicians regarding the injuries he sustained in the March 5, 2014, collision.

41.     As of the date of this filing, more than three months after Plaintiff's initial request for UIM benefits owed under the Policy, Defendant has failed to tender any UIM Benefits, or even partial benefits, owed to the Plaintiff under the terms of its own Policy.

42.     The Plaintiff continues to suffer from his injuries sustained in the March 5, 2014, collision.

43.     Defendant has unreasonably and in bad faith failed to offer Plaintiff any UIM Benefits to settle the Plaintiff's claim for UIM Benefits under the Policy.

44.     Defendant has failed to fairly and timely evaluate and tender UIM Benefits owed to the Plaintiff under the Policy.

45.     Defendant acted unreasonably and with knowledge of, or reckless disregard for, its unreasonableness.

## FIRST CLAIM FOR RELIEF
### Underinsured Motorist Benefits

46.     Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 45 of this Complaint, as if set forth *verbatim*.

47.     At the time of the aforementioned collision, the Plaintiff qualified as an "insured" for purposes of an insurance contract, the Policy, with Defendant.

48.     The Policy included a provision for uninsured/underinsured motorist bodily injury coverage, which provides that Defendant will pay for damages and bodily injuries sustained by the Plaintiff if injured by a negligent, uninsured or underinsured driver.

49.     McLeod was a negligent, underinsured driver for purposes of UIM Benefits owed to the Plaintiff under the terms of the Policy.

50.     The Plaintiff has satisfied all conditions precedent under the Policy and he is eligible to recover UIM benefits under the Policy.

51.     Defendant is liable for Plaintiff's injuries and damages, as described above, caused by the underinsured driver in accordance with the provisions of C.R.S. § 10-4-609.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

52.     Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 51 of this Complaint, as if set forth *verbatim*.

53.     The Policy was in full force and effect on the date and time the Plaintiff suffered injuries in the aforementioned collision.

54.     Defendant unreasonably failed to pay the Plaintiff benefits owed under the Policy.

55.     Defendant breached its contractual duty owed to the Plaintiff as an insured.

56.     The Plaintiff is entitled to damages allowed by law for breach of contract against Defendant.

### THIRD CLAIM FOR RELIEF
### Unreasonable Delay/Denial of a Claim for Benefits
### Pursuant to C.R.S. §§ 10-3-1115-1116

57.   Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 56 of this Complaint as if set forth *verbatim.*

58.   Defendant's delay and failure to pay the Plaintiff's claims for benefits owed pursuant to the UIM coverage under the Policy was and is unreasonable and in violation of C.R.S. §§ 10-3-1115 and 10-3-1116.

59.   Pursuant to § 10-3-1116, C.R.S., the Plaintiff is entitled to recover the covered benefit plus twice the covered benefit as well as attorney fees and costs from Defendant for the unreasonable delay and denial of his claim for underinsured motorist benefits.

### FOURTH CLAIM FOR RELIEF
### Bad Faith

60.   Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 59 of this Complaint as if set forth *verbatim.*

61.   As an insured, Defendant owes the Plaintiff a duty of good faith and fair dealing.

62.   Defendant's actions as set forth above are unreasonable and Defendant knew its actions were unreasonable and/or recklessly disregarded the fact that its actions were unreasonable.

63.   Defendant breached its duty of good faith and fair dealing and its covenant to act in good faith with regard to the Plaintiff.

64.   As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and will continue to suffer economic and non-economic damages as described above.

### JURY REQUEST

Trial to a jury of six (6) is requested on all issues so triable.

**WHEREFORE,** the Plaintiff, Duane Thompson, prays for judgment against Defendant Safeco Insurance Company of America, in an amount to be determined by the trier of fact for his losses as set forth above and for costs, expert witness fees, filing fees, pre and post-judgment interest, and such other further relief as the Court may deem appropriate, just and proper.

Respectfully submitted this 13th day of July, 2018.

ZANER HARDEN LAW, LLP

/S/ Britt A. Holtz
Marc Harden
Britt A. Holtz
*Attorney for Plaintiff*

Plaintiff's Address:

8884 East Easter Avenue
Centennial, CO 80112